UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARI A. DALSIS, | No. 2:13-cv-1559 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On October 15, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on January 15, 2010. (Transcript ("Tr.") at 16, 155-67.) Plaintiff's applications were denied initially, (id. at 88-97), and upon reconsideration. (Id. at 100-05.)

1

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on January 31, 2012. (Id. at 32-58.) Plaintiff was represented by a non-attorney representative and testified at that administrative hearing. (Id. at 32-33.) In a decision issued on February 9, 2012, the ALJ found that plaintiff was not disabled. (Id. at 27.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since January 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma; obesity; bipolar disorder; and bulimia (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can frequently climb, balance, stoop, kneel, crouch, and crawl. She must avoid concentrate (sic) exposure to irritants such as fumes odors dusts gases poorly ventilated areas. She is limited to simple, routine and repetitive tasks and low stress work, defined as requiring only occasional decision-making and only occasional changes in work setting. She is limited to jobs requiring only occasional interaction with the public and coworkers.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on December 14, 1987 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

/////

> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 18-26.)

On May 30, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's February 9, 2012. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 30, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

/////

3

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following two principal claims: (1) the ALJ's treatment of the medical opinion evidence of record constituted error; and (2) the ALJ improperly rejected plaintiff's own subjective testimony. (Pl.'s MSJ (Dkt. No. 17) at 13-23.[1])

**I.    Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Timothy Miller, plaintiff's treating physician, as well as that of Dr. Randy Kolin, an examining physician. (Id. at 13-18.)

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. (Id. at 831.) In addition, greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'" Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)). Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, on November 26, 2011, plaintiff's treating psychologist, Dr. Timothy Miller, issued a letter stating that from January 20, 2010 to February 10, 2010, he had seen plaintiff on four occasions for one-hour treatment sessions. (Tr. at 378.) Dr. Miller was aware that plaintiff was "taking mood stabilizing medication, prescribed by Dr. Martin, a local psychiatrist of good repute," and that Dr. Martin had diagnosed plaintiff as suffering with bipolar disorder.[2] (Id.) During these treatment sessions it was difficult for Dr. Miller to develop a treatment plan because plaintiff "was usually dysphoric, agitated, anxious, restless, or some combination of these." (Id. at 379.)

/////

---

[2] Although Dr. Martin's treatment notes are part of the administrative record in this matter, those notes are hand written and in large part illegible. Nonetheless, the evidence of record does reflect that plaintiff's prescription medications included Lithium, Topamax, Pristiq, Xanax, Ambien, Abilify and Lamictal. (Tr. at 265, 390, 397, 404.)

Dr. Miller diagnosed plaintiff as suffering from bipolar affective disorder with a current Global Assessment of Functioning ("GAF") score of 55,[3] "based on [his] observation" of plaintiff's "panic attacks, generalized anxiety, restlessness, poor attention and concentration, low grade despair and episodes of more intense despair, combined with moderate impairment." (Id. at 378-79.)

Dr. Miller went on to state that he saw plaintiff again beginning on August 2, 2011, for six more treatment visits. (Id. at 379.) During this period plaintiff's psychiatrist was "prescribing aggressively, in an attempt to relieve her depression while stabilizing her mood and avoiding new episodes of mania." (Id.) Dr. Miller opined that plaintiff's "primary problem is lethargic depression, with psychomotor slowing, apathy, social isolation, loss of ambition, loss of usual interests, extreme fatigue unrelieved by rest, and sleep disturbance." (Id.) Dr. Miller's then "current diagnosis," was that plaintiff suffered from bipolar affective disorder, "current episode depressed," with a GAF of 40[4] "based on [his] observation of several serious symptoms," discussed above. (Id. at 380.)

On January 30, 2012, Dr. Miller provided a second letter, in which he stated that he had "recently seen" plaintiff for an additional three treatment visits and that it was to him "evident that she has a persistent and treatment-resistant problem with severe major depression, characterized by inactivity, excessive sleep, binge eating, weight gain, apathy, social withdrawal, low energy and unexplained fatigue." (Id. at 469.) Moreover, Dr. Miller noted that plaintiff "takes several psychiatric medications, in rather large doses," which "are prescribed appropriately, given the severity of her symptoms." (Id.) In Dr. Miller's opinion plaintiff was "unable to look for work," and if she were to be hired he doubted "she would be able to perform adequately and attend work regularly at any job that might be available for her." (Id. at 470.)

---

[3] A GAF of fifty-one to sixty indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. Text Revision 2000).

[4] "A GAF of forty indicates some impairment in reality testing or communication, or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ acknowledged Dr. Miller's "two similar opinions," but "assign[ed] no weight to his opinion," finding that Dr. Miller's opinion was "not consistent with the medical evidence of record," did not "explain what the claimant remains able to do despite her impairments," provided no objective evidence to support his determination that plaintiff would be unable to perform adequately in a work setting, and because "whether an individual is capable of working is an administrative conclusion that is reserved to the Commissioner." (Id. at 24-25.)

The reasons offered by the ALJ in support of the decision to assign no weight to treating physician Dr. Miller's opinion are, however, deficient. First, it is well-established that an ALJ may not "simply reject a treating physician's opinions on the ultimate issue of disability." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014). See also Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) ("Dr. Johnson's statement that Hill would be 'unlikely' to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions.").

Second, it has often been recognized that mental disorders cannot be ascertained and verified to the same degree as physical impairments. Hartman v. Bowen, 636 F. Supp. 129, 132 (N.D. Cal. 1986). See also Williams v. Colvin, No. ED CV 13-1657 DFM, 2014 WL 4215550, at *4 (C.D. Cal. Aug. 25, 2014) ("Psychiatric impairments are not as amenable to substantiation by objective laboratory testing as are physical impairments."); Adams v. Astrue, No. C12-901-RSM BAT, 2013 WL 308965, at *2 (W.D. Wash. Jan. 7, 2013) ("a diagnosis of PTSD or depression must inherently rely upon a patient's subjective self-report"). Accordingly, in the case of mental illness, clinical and laboratory data may consist of "the diagnoses and observations of professional psychiatrists and psychologists." Hartman, 636 F. Supp. at 132. See also Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (reversing ALJ's decision to disregard psychiatrists' opinions while emphasizing that "disability may be proved by medically-acceptable clinical diagnoses").

/////

7

1     Third, although the ALJ asserts that Dr. Miller's opinion was inconsistent with the
2 medical evidence of record, the ALJ failed to explain precisely how Dr. Miller's opinion was
3 inconsistent with any item of evidence.  As noted above, if an ALJ rejects the opinion of a
4 treating physician the ALJ "must set forth his own interpretations and explain why they, rather
5 than the doctors', are correct."  Reddick, 157 F.3d at 725.  "In other words, an ALJ errs when he
6 rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,
7 asserting without explanation that another medical opinion is more persuasive, or criticizing it
8 with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v.
9 Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).

10     In addition to affording no weight to treating physician Dr. Miller's opinion, the ALJ
11 afforded only some weight to the opinion Dr. Randy Kolin, an examining physician.  In this
12 regard, Dr. Kolin, a licensed psychologist, examined plaintiff on February 24, 2011, "at the
13 request of" the Commissioner.  (Tr. at 315.)  "Based on the results of the requested mental status
14 exam and clinical interview, including personal history and accompanying documents," Dr. Kolin
15 opined, in relevant part, that plaintiff had a "moderately impaired ability to accept instructions
16 from supervisors and interact with coworkers and the public" because there were "significant
17 social impairments at this time." (Id. at 319.)  In Dr. Kolin's opinion, plaintiff was "unable to
18 perform work activities on a consistent basis without special or additional instruction as there are
19 memory impairments at this time," (id), which is consistent with, and supportive of, treating
20 physician Dr. Miller's opinion that plaintiff was unable "to perform [work] adequately . . . ."  (Id.
21 at 470.)

22     The ALJ, however, ascribed only "some weight" to Dr. Kolin's opinion while stating that
23 although portions of that opinion were consistent with the evidence of record, "others are extreme
24 given the minimal objective findings contained in the record."  (Id. at 24.)  However, once again,
25 the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
26 an examining physician.  Lester, 81 F.3d at 830.  Even if contradicted by another doctor, the
27 opinion of an examining physician may only be rejected for specific and legitimate reasons that
28 /////

are supported by substantial evidence in the record.[5]  Id. at 830-31; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

Here, the ALJ offered two reasons for rejecting portions of examining physician Dr. Kolin's opinion.  First, the ALJ stated that there was "no objective evidence to support the restrictions Dr. Kolin placed on the claimant's abilities to interact with supervisors, complete a normal workday, or perform work activities on a consistent basis." (Id.)  As noted above, mental impairments are difficult to diagnose and may be based on the observations of a psychologist. See Bilby, 762 F.2d at 719; Hartman, 636 F. Supp. at 132.

Moreover, the ALJ noted that because plaintiff "interacted appropriately with Dr. Kolin" and "treatment records [did] not indicate that she ha[d] problems getting along with her doctors," that suggested that plaintiff was "capable of interacting with supervisors." (Tr. at 24.)  It is entirely unclear to the court, however, how a patient's interaction with her doctor is in any way evidence that she could also interact appropriately with a supervisor in a work setting.  Indeed, according to the ALJ's logic in employed reaching this conclusion, every claimant capable of interacting appropriately with their doctor would be capable of interacting appropriately with a supervisor.  The court does not find this to be legitimate, let alone a convincing, reason for rejecting Dr. Kolin's opinion.

Second, with respect to plaintiff's difficulty in performing working activities, the ALJ stated that Dr. Kolin attributed that difficulty to plaintiff's "memory impairments," but described plaintiff's memory as "fair and provided no evidence consistent with significant memory problems." (Id.)  It is also not clear to the court, that someone with a "fair memory" cannot also have memory impairments of some degree.  Moreover, Dr. Kolin's reference to plaintiff's "fair" memory was part of plaintiff's mental status exam during which plaintiff was able to recall "2 out of 3 words after a brief delay." (Id. at 318.)  In contrast, Dr. Kolin's opinion that plaintiff would have difficulties performing work activities on a consistent basis because of her memory impairments, was based on a "clinical interview, including personal history and accompanying

---

[5] Dr. Miller and Dr. Kolin were the only physicians to offer medical opinions regarding plaintiff's mental impairments.

9

documents," in addition to the mental status exam. (Id.)  For these reasons, the court finds that the ALJ failed to provide legitimate reasons for rejecting Dr. Kolin's opinion that plaintiff's memory impairments caused her difficulty in performing working activities.

Accordingly, for the reasons stated above, the court finds that the ALJ erred in his treatment of the medical opinion evidence of record and that plaintiff is entitled to relief with respect to this claim.

## II.    Plaintiff's Subjective Testimony

Plaintiff also argues that the ALJ erred by rejecting plaintiff's testimony concerning the severity of her impairments. (Pl.'s MSJ (Dkt. No. 17) at 17-23.)

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

"[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment.  (Tr. at 23.)

In this regard, the ALJ stated that there were "few objective findings" to support plaintiff's testimony.  However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). See also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue.")[6]; Smolen, 80 F.3d at 1282 ("the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom"); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").  Moreover, in this case, plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms is supported by the medical opinion evidence provided by her treating physician, Dr.

/////

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

Miller, and examining physician, Dr. Kolin, which the ALJ improperly rejected for the reasons discussed above.

The ALJ also stated in his decision that "evidence indicates that the claimant has friends, is able to concentrate on some tasks, and interacts appropriately with others in some situations." (Tr. at 23.) However, it appears the plaintiff's testimony was that while she had "some" friends, she did not have any friends, "right now." (Tr. at 47.) Moreover, it is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). Notably, the ALJ failed to explain in his decision how plaintiff's purported ability to concentrate on some tasks and interact appropriately in some situations and maintain friendships are transferable into a work setting. See Orn, 495 F.3d at 639 ("Here, there is neither evidence to support that Orn's activities were 'transferable' to a work setting nor proof that Orn spent a 'substantial' part of his day engaged in transferable skills.").

The ALJ also stated that plaintiff's statements to her doctors were not consistent because although, "[s]he indicated that she leaves her bed for only two hours per day and experiences suicidal thoughts on almost a daily basis . . . . she often tells her psychiatrist that she is doing better and only rarely complains of suicidal thoughts."[7] (Tr. at 23.) However, it has been recognized that

> it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). See also Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the

---

[7] It appears from the record that plaintiff was psychiatrically hospitalized at age 17 for active suicidal ideation during which time plaintiff tried to hang herself. (Tr. at 35, 40.)

purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Finally, the ALJ rejected plaintiff's testimony because, "while she testified that she sees her psychiatrist once a month and her therapist approximately weekly," the medical evidence established that she had "attended only 15 appointments with her therapist and 14 with her psychiatrist." (Tr. at 23.) Plaintiff testified, however, that although she has monthly appointments with her psychiatrist and weekly appointments with her therapist, sometimes she is unable to attend those appointments due to her depression. (Tr. at 39, 51.) Thus, there was no inconsistency in plaintiff's testimony as suggested by the ALJ. Moreover, plaintiff's treating physician, Dr. Miller, opined that plaintiff's challenges in keeping appointments was "typical of agitated, dysphoric, manic patients," because "[t]he disorder makes it very difficult for them to cooperate with treatment." (Id. at 379.)

For all of the reasons stated above, the court finds that the ALJ's decision does not offer specific, clear and convincing reasons for rejecting plaintiff's testimony regarding her subjective symptoms and their severity. Accordingly, plaintiff is entitled to summary judgment in her favor with respect to this claim as well.

### III.     Scope of Remand

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (finding that it was an abuse of discretion for the district court to remand for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that plaintiff was not disabled); Benecke, 379 F.3d at 596 ("Because the evidence establishes that Benecke would be unable to maintain employment while

managing her pain and fatigue, remand for further administrative proceedings serves no useful purpose and is unwarranted."). However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Benecke, 379 F.3d at 594.

Here, the court finds that the record has been fully developed, that the ALJ failed to provide a legally sufficient reason for rejecting plaintiff's own testimony and the medical opinions offered by her treating physician Dr. Miller and examining physician Dr. Kolin. Moreover, if the plaintiff's testimony and the medical opinions offered by Dr. Miller and Dr. Kolin were properly credited, the ALJ would be required to find plaintiff disabled on remand.

Accordingly, the court finds that in this case it is appropriate to remand with the direction to award benefits. See Martinez v. Colvin, 585 Fed. Appx. 612, 613 (9th Cir. 2014) ("if Martinez's testimony and Dr. Novak's opinion were properly credited, Martinez would be considered disabled. We therefore reverse the decision of the district court and remand with instructions to remand to the ALJ for the calculation and award of benefits")[8]; Garrison, 759 F.3d at 1023 ("Garrison satisfies all three conditions of the credit-as-true rule and . . . a careful review of the record discloses no reason to seriously doubt that she is, in fact, disabled. A remand for a calculation and award of benefits is therefore required under our credit-as-true precedents."); Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 17) is granted;

2. Defendant's cross-motion for summary judgment (Dkt. No. 21) is denied;

---

[8] See fn. 6, above.

3. The Commissioner's decision is reversed; and

4. This matter is remanded with instructions to award benefits.

Dated: March 6, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\dalsis1559.ord.docx